Mara D. Curtis (SBN 268869)
Brian M. Noh (SBN 293564)
Tanner J. Hendershot (SBN 346841)
REED SMITH LLP
515 South Flower Street, Suite 4300
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080
Email: mcurtis@reedsmith.com
bnoh@reedsmith.com
thendershot@reedsmith.com

Attorneys for Defendants
ALBERTSON'S LLC, ALBERTSONS COMPANIES, INC., and ALBERTSONS SAFEWAY LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

SABRINA MARIE DELGADO, an individual on behalf of themselves and all others similarly situated, and the general public,

*Plaintiff*,

vs.

ALBERTSON'S LLC, a Delaware corporation; ALBERTSONS COMPANIES, INC., a Delaware corporation; ALBERTSONS SAFEWAY LLC, a Delaware corporation; SANTOS TOVAR, an individual; and DOES 1 through 50, inclusive,

*Defendants*.

Case No. 5:26-cv-4979

[Superior Court of California, Riverside, Case No. CVRI2604530]

**DEFENDANTS ALBERTSON'S LLC'S, ALBERTSONS COMPANIES, INC.'S, AND ALBERTSONS SAFEWAY LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. 1331, 1332, 1367, 1441, 1446, AND 1453**

Complaint Filed: July 24, 2026
Trial Date: None

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF SABRINA MARIE DELGADO, HER ATTORNEYS OF RECORD, AND DEFENDANT SANTOS TOVAR:**

PLEASE TAKE NOTICE that Defendants Albertson's LLC ("Albertson's"), Albertsons Companies, Inc., and Albertsons Safeway LLC (collectively, "Defendants") hereby remove this action from the Superior Court of the State of California for the County of Riverside to the United States District Court for the Central District of California. Defendants remove this action pursuant to 28 U.S.C. §§ 1331, 1332(d) (the Class Action Fairness Act of 2005), 1367, 1441, 1446, and 1453 on the following grounds:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## STATEMENT OF JURISDICTION

1. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), which amended 28 U.S.C. § 1332 to provide that a putative class action is removable to federal court if the proposed class consists of at least 100; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and one member of the proposed class is a citizen of a state different from any defendant. See 28 U.S.C. § 1332(d). The Act authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As demonstrated below, this action meets all of CAFA's removal requirements and is timely and properly removed by the filing of this Notice.

## PLEADINGS, PROCESS AND ORDERS

2. On or about July 24, 2026, Plaintiff Sabrina Marie Delgado ("Plaintiff") filed a Complaint in the Superior Court of the State of California in and for the County of Riverside, entitled *Sabrina Marie Delgado, an individual on behalf of themselves and all others similarly situated, and the general public v. Albertson's LLC, a Delaware corporation; Albertsons Companies, Inc., a Delaware corporation; Albertsons Safeway LLC, a Delaware corporation; Santos Tovar, an individual; and DOES 1 through 50, inclusive*, Case No. CVRI2604530, filed in the Superior Court of the State of California, in and for the County of Riverside (the "State Court Action").

*See* Complaint (attached as Ex. 1 to the Declaration of Tanner J. Hendershot ("Hendershot Decl."), ¶ 2(a)).

3. The Complaint is a purported class action alleging the following causes of action: (1) failure to pay minimum wages; (2) failure to pay hourly wages and overtime; (3) failure to provide meal periods; (4) failure to reimburse necessary business expenses; (5) failure to timely pay all wages owed upon termination of employment; (6) unfair competition. *Id.* The Complaint also asserts individual claims also arising out of Plaintiff's employment relationship with Albertson's for sexual harassment under the California Fair Employment and Housing Act, retaliation in violation of FEHA, retaliation in violation of California Labor Code Section 1102.5, failure to prevent harassment and retaliation in violation of FEHA, wrongful termination in violation of public policy, intentional infliction of emotional distress, and sexual battery. *Id.*

4. A copy of the Summons and Complaint was served on Defendants' agent for service of process on July 30, 2026. Declaration of Carina Tai ("Tai Decl.") ¶ 9, Ex. 1.

5. To Defendants' knowledge, as of the date of this Notice of Removal, the only other named defendant is an individual named Santos Tovar ("Defendant Tovar"). DOES 1–50 are presently unnamed and unknown and, therefore, have not been served with the Complaint.

6. The Initial Case Management Conference is scheduled for September 28, 2026, at 8:30 a.m. in the State Court Action. Hendershot Decl., ¶ 3. The documents in the State Court Action to date are: (1) the Complaint; (2) Civil Case Cover Sheet; (3) Summons; (4) Certificate of Counsel; (5) the Alternate Dispute Resolution Information Package; (6) Notice of Department Assignment; (7) Case Management Conference Order; (8) Court Ruling re: Complex Determination; and (9) Notice of Case Management Conference. *Id.*, ¶ 2(a)-(i). There are no additional hearings or other proceedings in the State Court Action, and Defendants have not received or filed

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

any papers or pleadings in the State Court Action other than those attached as Exhibits 1-9 to the Hendershot Declaration.

**JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT**

7. Section 4 of CAFA sets forth the general rule that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which …any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

8. Section 4 of CAFA further states that the jurisdictional rule set forth in 28 U.S.C. § 1332(d)(2) applies only to class actions in which the number of members of all proposed plaintiff classes, in the aggregate, is 100 or more. 28 U.S.C. § 1332(d)(5).

9. This Court has jurisdiction pursuant to CAFA, 28 U.S.C. § 1332(d), and this action may be removed by Defendants pursuant to the provisions of 28 U.S.C. § 1441(a), because the proposed plaintiff class consists of at least 100 members, the total amount in controversy exceeds $5,000,000, and there is diversity between at least one proposed class member and one defendant.

10. Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 84(c), 1441, and 1446(a). The State Court Action was originally brought in the Riverside County Superior Court, which is located within the Central District of California, Eastern Division. *Id.*, § 84(c)(1). Venue is proper with this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

11. Defendants are not aware of whether Defendant Tovar was properly served with the Complaint or when he was served or whether he consents to removal of this action. That, however, does not matter. So long as one named defendant consents to remove this action under CAFA, removal is proper. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."); *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 775 (9th Cir. 2020) ("Finally, we briefly address Greene's argument that two of the defendants lack standing because they were non-removing parties. This argument is meritless. A class action "may be removed by any defendant without the consent of co-defendants" under CAFA.") (citation omitted); *Progressive W. Ins. Co. v. Preciado*, 479 F.3d 1014, 1017 n.2 (9th Cir. 2007) (explaining that CAFA's removal statute in 28 U.S.C. 1453(b) removed the requirement that all parties must consent to a removal under CAFA). Here, Defendants filing this Notice of Removal consent to removal of this action, rendering it proper under CAFA.

12. Plaintiff brought this action as a class action pursuant to California Code of Civil Procedure § 382, a state statute authorizing an action to be brought by one or more representative persons as a class action. Hendershot Decl., Ex. 1 [Compl.], ¶ 14. Plaintiff seeks to represent "[a]ll persons employed by Defendants, collectively or separately, and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California but excluding those persons who worked one or more shifts at Defendant Albertson's LLC's distribution centers, four years prior to the filing of this action and ending on the date that final judgment is entered in this action" ("Putative Class" or "Putative Class Members"). Compl., ¶ 15(a)–(e). Plaintiff divides the Putative Class into a Meal Period Subclass and Waiting Time Penalties Subclass. *Id.*, ¶ 15(b), (d). The Waiting Time Penalties Subclass seeks to represent Putative Class Members three years before the filing of this action. *Id.*, ¶ 15(d). The Relevant Time Period defined in this action is "the time period beginning four years prior to the filing of this action until judgment is entered." *Id.*, ¶ 15.

13. Plaintiff also seeks to represent an Expense Reimbursement Class and a UCL Class. Plaintiff defines the Expense Reimbursement Class as "[a]ll persons employed by the Company in California, excluding those persons who worked one or

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

more shifts at Defendant Albertson's LLC's distribution centers, who incurred business expenses during the Relevant Time Period." *Id.*, ¶ 15(c). The UCL Class is defined as "[a]ll Hourly Employee Class and Expense Reimbursement Class members, excluding those persons who worked one or more shifts at Defendant Albertson's LLC's distribution centers, employed by the Company in California during the four years prior to the filing of this action and ending on the date that final judgment is entered in this action." *Id.*, ¶ 15(e).

14. Plaintiff also asserts additional claims arising out of her employment with Defendants, including sexual harassment under FEHA, retaliation in violation of FEHA, retaliation in violation of California Labor Code Section 1102.5, failure to prevent harassment and retaliation in violation of FEHA, wrongful termination in violation of public policy, intentional infliction of emotional distress, and sexual battery. *Id.*, ¶¶ 37–93. The battery claim is only alleged against Defendant Tovar. *Id.*

**The Purported Class Contains At Least 100 Members**

15. In the Complaint, Plaintiff alleges that the Putative Class Members "are so numerous that the individual joinder of each individual class member is impractical." Compl., ¶ 17.

16. Plaintiff was employed by Albertson's. Declaration of Bruce Frazier ("Frazier Decl."), ¶ 3. The aggregate number of hourly non-exempt employees that were employed by Albertson's between July 24, 2022 to August 17, 2026, excluding warehouse workers, is at least 27,764. *Id.* at ¶ 3a. Therefore, there are over 100 Putative Class Members.

**There Is Diversity of Citizenship Between**
**At Least One Proposed Class Member And One Defendant**

17. CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C §§ 1332(d)(2)(A); 1453(b). Diversity of citizenship is met because Plaintiff and Defendants are citizens of different states. Plaintiff is a citizen of California. While

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendant Tovar is a citizen of California, Defendants are citizens of Delaware and Idaho. Frazier Decl., ¶ 3; Tai Decl., ¶¶ 3-8.

18. **Plaintiff's Citizenship.** For diversity purposes, a person is a "citizen" of the state in which they are domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986).

19. According to the Complaint, at the time this action commenced and at the time of removal, Plaintiff was a resident of California. Compl., ¶ 5. The allegations by Plaintiff establish that she is a citizen of the State of California. *See Lew*, 797 F.2d at 751 (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, No. 1:05-cv-01187-OWW-GSA, 2008 U.S. Dist. LEXIS 21162, at *22–23 (E.D. Cal. Mar. 14, 2008) (alleged place of residence provides "prima facie" proof of domicile). Accordingly, Plaintiff is a citizen of the State of California for purposes of removal.

20. **Albertson's Citizenship.**[1] Albertson's LLC is a limited liability company and is now, and was at the time this action commenced, a citizen of the states of

---

[1] CAFA's "home state" exception does not apply to this case. The home state exception requires: (1) two-thirds or more of the members of the proposed class in aggregate to be citizens of the state in which the action is filed; and (2) all the "primary defendants" to be citizens of the state in which the action is filed. 28 U.S.C. § 1332(d)(4)(B); *Harrington v. Mattel, Inc.*, No. C07-05110 MJJ, 2007 WL 4556920, at *4–5 (N.D. Cal. Cal. Dec. 20, 2007). Here, Defendants against whom the class action claims are alleged are not citizens of California and thus the "home state" exception does not apply. Similarly, CAFA's "local controversy" exception is not applicable because Defendants against whom the class action claims are asserted are not citizens of California, and Defendants have been subject to at least one class action regarding similar allegations to those here in the past three years, and thus all requirements per 28 U.S.C. § 1332(d)(4) cannot be met. *See* Defendants' Request for Judicial Notice, Ex. 1 (Haro Class Complaint). Therefore, 28 U.S.C. § 1332(d)(5)(A) is also not applicable.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Delaware and Idaho. *See* Tai Decl., ¶¶ 3–8. Under traditional diversity principles, the citizenship of a limited liability company is determined by examining the citizenship of each member of the company. *Carden v. Arkoma Assocs*., 494 U.S. 185, 195–96 (1990); *Johnson v. Columbia Properties Anchorage L.P*., 437 F.3d 894, 899 (9th Cir. 2006). The citizenship of a corporation, instead, is "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "Principal place of business means the corporate headquarters where a corporation's high-level officers direct, control, and coordinate its activities on a day-to-day basis, also known as the corporation's 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2000). A corporation's nerve center is a "single place" and "should normally be the place where the corporation maintains its headquarters." *Id.* at 93. Relevant factors in this analysis include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets, and where day-to-day control over the company is executed. *See, e.g., Tomblin v. XLNT Veterinary Care, Inc*., Case No. 09-cv-1940 BTM (JMA), 2010 WL 2757311, at *4-5 (S.D. Cal. July 12, 2010).

21. Recent Ninth Circuit district courts have held that, in a CAFA case, the traditional rule concerning the citizenship of a limited liability company is replaced by a rule treating them as unincorporated associations whose citizenship is determined by the principal place of business and state under whose laws it is organized. *Hernandez v. Pure Health Rsch. LLC*, Case No. 23-cv-00971-BAS-DEB, 2023 U.S. Dist. LEXIS 191909, at *6 (S.D. Cal. Oct. 25, 2023); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 714–16 (N.D. Cal. 2021) (recognizing that in CAFA actions an LLC's citizenship is determined by principal place of business and state of organization); see also *Davis v. HSBC Bank Nevada, N.A*., 557 F.3d 1026, 1032 & n.13 (9th Cir. 2009) (holding that a limited partnership is an unincorporated association under CAFA) (Kleinfeld, J., concurring). CAFA states that "an unincorporated association shall be deemed to be a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Under either rule, however, Albertson's is a citizen of the state of Idaho and Delaware, and not a citizen of California, so diversity of citizenship is met. Tai Decl., ¶¶ 3–7.

22. If the traditional limited liability citizenship rules apply, Albertson's is now, and was at the time this action was commenced, a citizen of the states of Delaware and Idaho within the meaning of 28 U.S.C. § 1332. Tai Decl., ¶ 3. Albertson's is a limited liability company. The citizenship of a limited liability company is traditionally determined by examining the citizenship of each member of the company.

23. Here, the sole member of Albertson's LLC is Albertson's Safeway LLC, a limited liability company incorporated under the laws of Delaware with its principal place of business in Boise, Idaho. Tai Decl., ¶¶ 4–6. The sole member of Albertsons Safeway LLC is Albertsons Companies, Inc. *Id.* at ¶¶ 6. Albertsons Companies, Inc. is now, and was at the time this action was commenced, a citizen of the states of Idaho and Delaware within the meaning of 28 U.S.C. § 1332. *Id.* at ¶¶ 6–7. Albertsons Companies, Inc. is a corporation organized and existing under the laws of the state of Delaware with its headquarters and principal place of business located in Idaho. *Id.*

24. If the now recognized CAFA rules for of a limited liability company apply, Albertson's is now, and was at the time this action was citizenship commenced, a citizen of the states of Delaware and Idaho. Tai Decl., ¶ 3. Albertson's was, and at all times herein, incorporated under the laws of Delaware and has its principal place of business in Boise, Idaho. *Id.* Here, Albertson's principal place of business is indisputably Idaho based upon the following factors: (1) it is where the company's corporate headquarters is located; (2) it is where the company's direction, control, and coordination of its business activities takes place; (3) it is where many of its high-level executive and administrative operations are managed and operated; (4) it is where company-wide policy decisions are made; and (5) it is where the day-to-day

management of Albertson's business takes place. *Id.* Under these facts, Albertson's is a citizen of Delaware and Idaho.

25. **<u>Defendant Santos Tovar's Citizenship.</u>** As explained above, for diversity purposes, a person is a "citizen" of the state in which they are domiciled. *See Kantor*, 704 F.2d at 1090. A person's domicile is the place he or she resides with the intention of remaining, or to which he or she intends to return. *See Lew*, 797 F.2d at 749–50.

26. According to the Complaint and Defendants' records, at the time this action was commenced and at the time of removal, Defendant Tovar was a resident of California. Compl., ¶ 6; Frazier Decl., ¶ 3. Further, the allegations by Plaintiff establish that Defendant Tovar is a citizen of the State of California. *See* Compl., ¶ 6; *Lew*, 797 F.2d at 751 (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also Dyer*, 19 F.3d at 519–20 (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith*, 2008 U.S. Dist. LEXIS 21162, at *22–23 (alleged place of residence provides "prima facie" proof of domicile). Accordingly, Defendant Tovar is a citizen of the State of California for purposes of removal.

27. Even though Defendant Tovar is a citizen of California, removal is proper here because, as explained above, so long as one named defendant consents to remove this action under CAFA, removal is proper. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."); *Greene*, 965 F.3d at 775 ("Finally, we briefly address Greene's argument that two of the defendants lack standing because they were non-removing parties. This

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

argument is meritless. A class action "may be removed by any defendant without the consent of co-defendants" under CAFA.") (citation omitted); *Preciado*, 479 F.3d at 1017 n.2 (explaining that CAFA's removal statute in 28 U.S.C. 1453(b) removed the requirement that all parties must consent to a removal under CAFA). Accordingly, diversity of citizenship is met for purposes of removal under CAFA.

28. **Doe Defendants**. Plaintiff has also named as Defendants DOES 1 through 50. For purposes of removal based on diversity, "the citizenship of Defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b); *see Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed Defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc*., 311 F.3d 966, 971 (9th Cir. 2002) (same). The existence of the alleged Doe Defendants thus does not impact this Court's removal jurisdiction. *Albrego v. Dow Chemical Co*., 443 F.3d 676, 679–80 (9th Cir. 2006) (rule applied to CAFA removal). Accordingly, diversity of citizenship is met here.

**Alleged Amount In Controversy Exceeds $5,000,000**

29. Under CAFA, the articulated claims of all class members are aggregated to determine if the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6). Significantly, Congress intended federal jurisdiction to exist under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Staff of S. Comm. on the Judiciary, 109th Cong., Rep. on The Class Action Fairness Act of 2005, 42 (Comm. Print 2005). The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

interstate class actions should be heard in a federal court if properly removed by any defendant.").

30. When determining the amount that a plaintiff has placed in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal citations and alterations omitted). A district court may consider the allegations of the complaint and the contents of the removal petition and any supporting evidence in determining whether the jurisdictional amount has been established. *See Singer v. State Farm Mutual Auto Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997).

31. Defendants deny Plaintiff's allegations of misconduct and intend to defend themselves vigorously against all of Plaintiff's causes of action. Nevertheless, and without admitting that Plaintiff and/or any member of the putative class can recover any damages, when one considers the number of alleged Putative Class Members, the number of alleged violations of California law, the statute of limitations period embraced by the claims, and the class definition alleged in the State Court Action, the aggregate amount in controversy presented by the case exceeds $5,000,000 for purposes of removal based on the following:

32. For purposes of determining the aggregate amount in controversy[2] for this motion, Defendants assumed a Putative Class of 27,764 individuals working for Albertson's in California between July 24, 2022 and August 17, 2026. Frazier Decl., ¶ 3a.

---

[2] The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Although not required to do so, Defendants have established the amount in controversy by referencing Plaintiff's allegations and/or by setting forth information in this notice of removal that demonstrates that the amount in controversy is more likely than not to exceed the jurisdictional minimum.

33. The below calculations are further conservatively based on the lowest applicable minimum wage in California for employers of more than 26 employees during the relevant time period from July 24, 2022 through present, of $15.00. Labor Code § 1182.12(b)(1)(F). In addition, the Putative Class Members worked approximately 2,275,557 workweeks between July 24, 2022 and August 17, 2026. *Id.* at ¶ 3(c).

34. **Unpaid Hourly and Overtime Wages Claim**. In the Complaint, Plaintiff alleges that "Defendants had a common policy and practice of systemically failing to pay Plaintiff and Class Members proper wages and overtime for all hours worked, at the proper rates of pay." Compl., ¶ 32. Among other things, Plaintiff alleges that Defendants "implemented a common policy and practice" of requiring Plaintiff and the Putative Class Members to perform off the clock work during unpaid meal periods, as well as were required to wait in line to use the time clock on the bookkeeper's computer to clock in and out. Compl., ¶¶ 32, 107. Plaintiff also alleges that the Plaintiff and Putative Class Members were required to clock out for their unpaid meal periods and continue working while off-the-clock due to alleged understaffing and excessive workloads. Compl., ¶¶ 32, 34. Plaintiff also alleges that Plaintiff and Putative Class Members were "prohibited from leaving the work premises during meal periods, especially during the evening shift." *Id.*, ¶ 34. Alleging a "pattern and practice" can reasonably be interpreted to mean that each class member suffered the alleged harm. *See, e.g.*, *Danielsson v. Blood Ctrs. Of the Pac.*, No. 19-cv-04592-JCS, 2019 U.S. Dist. LEXIS 222539, at *2 (N.D. Cal. Dec. 30, 2019) (finding one hour of overtime for every class member, every week, was reasonable where the complaint alleged a "pattern and practice" of failing to pay overtime wages).

35. Based on these allegations, Plaintiff contends that she and the Putative Class Members are entitled to recover unpaid wages, including straight time, overtime, attorney's fees, and costs of suit. Compl., ¶¶ 109–111. California law currently applies a four-year statute of limitations to unfair competition claims based on alleged unpaid



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

wage violations. *See* Cal. Bus. & Prof. Code § 17208. Defendants deny the validity of Plaintiff's claim.

36. ***Total Potential Unpaid Hourly and Overtime Wages***. Defendants deny the validity and merit of Plaintiff's claim for unpaid hourly and overtime wages. For the purpose of removal, however, Defendants conservatively estimate 5 minutes per workweek, based on Plaintiff's allegations that he and the Putative Class Members had to work off-the-clock "consistently" and "systemically." Compl., ¶¶ 107–108. The lowest applicable minimum wage in California during the timeframe from February 26, 2022 through present, of $15.00. This results in a weekly unpaid wage obligation of $1.25 [$15.00/60 minutes x 5 minutes]. As set forth above, there were approximately 2,275,557 workweeks attributable to Putative Class Members between July 24, 2022 and August 17, 2026. Frazier Decl., ¶ 3(c). Thus, a reasonable estimate of Albertson's aggregate unpaid wage obligation under Plaintiff's alleged theory would be $2,884,446.25 [$1.25 x 2,275,557 weeks].

37. **Meal Period Claim**. The Complaint alleges that Defendants "had a common policy and practice of systematically denying Plaintiff and Meal Period Sub-Class Members the opportunity to take meal periods in compliance with the California Law", prohibited Plaintiff and Putative Class Members from leaving the work premises during meal periods, especially during the evening shift, were not relieved of all work duties during unpaid meal periods, and were required to keep working through unpaid meal periods. Compl., ¶ 127. Further, Plaintiff alleges that Defendants had a policy "of not scheduling each meal period as part of each work shift", had "no formal written meal period policy that encouraged employees to take their meal periods, or that advised Meal Period Sub-Class Members of their meal and rest period rights" and had a "practice of requiring putative class members to continue working through their meal and rest periods due to the excessive workload." *Id.*, ¶ 130.

Plaintiff further alleges that Plaintiff and the "Members of the Meal Period Class are entitled to damages in an amount equal to one additional hour of pay at each

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

employee's regular rate of compensation for each workday that one or more meal periods were not provided to them." *Id.*, ¶ 134. Based on these allegations, Plaintiff contends that he and the Putative Class Members are entitled to unpaid premium wages, interest, and costs of suit. *Id.*, ¶ 134–35. California law currently applies a four-year statute of limitations to unfair competition claims based on alleged unpaid meal period premium violations. *See* Cal. Bus. & Prof. Code § 17208. Defendants deny the validity of Plaintiff's claim.

38. ***Total Potential Liability For Meal Period Compensation:*** Thus, taking as true Plaintiff's claim that Defendants did not provide meal periods to its employees in accordance with the law, then Plaintiff alleges that the Putative Class Members could be eligible for one hour pay for meal periods for each day worked where such a meal period was not provided. Compl, ¶¶ 121–135. Here, Defendants assumed a conservative violation rate of one (1) missed and/or interrupted meal period every eight workweeks based on Plaintiff's broad allegations. *Id.* at ¶ 74. As noted above, the Putative Class Members were employed for approximately 2,275,557 weeks between July 24, 2022 to August 17, 2026. Frazier Decl., ¶ 3(c). Defendants then applied the aforementioned $15.00[3] minimum wage rate, in lieu of an hour of premium pay at the employee's regular rate of pay, to the 2,275,557 workweeks based on this conservative estimate (i.e., 1 hour of premium pay owed in 284,444 workweeks (1/8 of the estimated workweeks worked by the Putative Class Member) from July 24, 2022 to August 17, 2026). *Id.* at ¶¶ 3(b) and (c). Under Plaintiff's' alleged theory, Defendants could be liable for $4,266,669.38 in allegedly unpaid meal period premiums for meal periods that allegedly were not provided [($15.00 x [2,275,556 workweeks / 8 (to account for one meal period violation every eight workweeks rounded down)])].

///

[3] For purposes of calculating potential minimum wage damages in this Notice of Removal, Defendants conservatively utilized the 2022 California minimum wage of $15.00/hour rather than the current minimum wage rate of $16.90/hour.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

39. **Waiting Time Penalties Claim**. Plaintiff seeks penalties under California Labor Code section 203. As set forth in the Complaint, Plaintiff alleges that Defendants failed to timely pay final wages in accordance with the Labor Code to the Putative Class Members. Compl., ¶ 150. Plaintiff alleges that Defendants' failure to timely pay all final wages was willful and that Defendants intentionally adopted policies or practices "incompatible" with Labor Code sections 201 and/or 202. *Id.*, ¶ 152. As such, Plaintiff "seeks waiting time penalties from the dates that their final wages have first become due until paid, up to a maximum of thirty days, and interest thereon." *Id.*, ¶ 153. The statute of limitations for waiting time penalties under Labor Code § 203 is three years. *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010). Defendants deny the validity and merit of Plaintiff's claim.

40. ***Total Potential Liability for Waiting Time Penalties:*** There were approximately 11,365 Putative Class Members whose employment ended between July 24, 2023 and August 17, 2026. Frazier Decl., ¶ 3(d). Based on the allegations in the Complaint, these 11,365 individuals seek payment for waiting time penalties, interest, attorneys' fees and costs of suit. *See* Compl., ¶ 154. Further, based upon the lowest applicable California minimum wage rate of $15.50 in 2023, (Lab. Code 1182.12(b)(1)(F)), thirty days (the statutory penalty) of pay for even 10% of individuals terminated during this time period under Plaintiff's theory amounts to $4,225,920 [($15.50 x 8 hrs. x 30 days) x 1,136 (11,365 Putative Class Members x 10%)].

///

///

///

///

///

///

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Total Aggregate Minimum Potential Liabilities and Additional Potential Recoveries Based on the Allegations in Plaintiff's Complaint.**

| AMOUNT IN CONTROVERSY | |
|---|---|
| **Basis for Claim** | **Amount** |
| Unpaid Hourly and Overtime Wages | $2,884,446.25 |
| Meal Period Premium Wages | $4,266,669.38 |
| Waiting Time Penalties | $4,225,920.00 |
| TOTAL | $11,377,035.63 |

41. **Other Damages**. The jurisdictional minimum amount in controversy is met and easily surpassed by conservative estimates of the afore-referenced alleged unpaid hourly and overtime wage, meal period premiums, and waiting time penalty claims. Plaintiff is also seeking allegedly unpaid minimum wages, allegedly unreimbursed business expenses, and claims for restitution under the Unfair Competition laws, as well as unpaid wages and general damages associated with her FEHA and Labor Code retaliation claims, and common law claims for wrongful termination, intentional infliction of emotional distress, and battery, liquidated damages, punitive damages, statutory penalties, interest, attorneys' fees and costs. Compl., Prayer for Relief. These additional items bolster Defendants' position that the amount in controversy is in excess of $5,000,000. In addition, attorneys' fees awards can properly be included in calculating the amount in controversy, and such awards are commonly in the 25% to 33% range of an award to the class. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that attorneys' fees may be included when calculating the amount in controversy). Notwithstanding the exclusion of the potential liabilities of Plaintiff's remaining claims, Defendants have clearly

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

demonstrated that the potential amount put in controversy by Plaintiff in her Complaint exceeds the $5,000,000 jurisdictional minimum under CAFA.[4]

42. In sum, through Defendants' own investigation and calculations as set forth herein, a preponderance of the evidence supports removal of this matter because CAFA jurisdiction has been established, even based on conservative calculations. Therefore, removal of this matter is appropriate.

**ORIGINAL JURISDICTION – FEDERAL QUESTION**

43. The State Court Action is a civil action over which this Court has original jurisdiction under 28 U.S.C. §§ 1331, 1367 and 1441. The Complaint alleges a putative class claim for purported breach of contract on behalf of Plaintiff. Defendants assert that Plaintiff's claim is completely preempted by the National Labor Relations Act ("NLRA") and/or Section 301 of the Labor Management Relations Act ("LMRA") and, therefore, this case presents a federal question within the original jurisdiction of this Court. 29 U.S.C. § 185(a).

44. Plaintiff was employed by Albertson's and her employment is governed by a collective bargaining agreement ("CBA") negotiated with the United Food & Commercial Workers International Union, CLC ("UFCW"). *See* CBA (attached to the Declaration of Guiseppe Gutierrez as Ex. A, ¶ 3). A true and correct copy of the applicable CBA that governed Plaintiff's employment with Albertson's is attached to the Gutierrez Decl. as Exhibit A, and is incorporated herein by this reference as if set forth in full. The UFCW, the union that is a party to the CBA, is a labor organization within the meaning of the NLRA. 29 U.S.C. § 152(5).

45. Under the "complete preemption" doctrine, federal question jurisdiction exists and removal is proper wherever federal law completely supplants state law in a particular area. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 64 (1987). To

[4] Again, Defendants provide these calculations solely to establish that the amount in controversy exceeds the jurisdictional minimum. Defendants make no admission of liability and deny Plaintiff's right to recover with respect to any aspect of this case.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

determine whether a state law claim is preempted by the LMRA, an inquiry must first be made to determine whether the right asserted is "conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted and the analysis ends there. If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective bargaining agreement.' If such dependence exists, then the claim is preempted by section 301…." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007); *Bernardi v. Amtech/San Francisco Elevator Co.*, No. C 08-01922 WHA, 2008 WL 2345153, at * 3 (N.D. Cal. June 5, 2008).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**<u>LABOR CODE SECTION 510 CLAIMS ARE PREEMPTED</u>**

46. Plaintiff's ninth cause of action alleges, among other things, that Defendants failed to pay her and the putative class overtime wages due under California law. Compl., ¶¶ 112–120. The requirement that employees receive overtime compensation is set forth in California Labor Code Section 510; however, there is an exception to California's overtime requirements for employees covered by a CBA. Pursuant to California Labor Code Section 514, California's overtime requirements "do not apply to an employee covered by a valid [CBA] if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Lab. Code § 514.

47. As explained above, Plaintiff and certain putative class members were subject to a valid CBA at all times relevant to this action. Moreover, the governing Collective Bargaining Agreement expressly covers employee wages, hours and working conditions. CBA (attached as Ex. A to the Gutierrez Decl.), Article 5 – Working Hours and Overtime, Article 6 – Wages, Article 14 – General Conditions, and Appendix A – Hourly Pay Rates and Progressions for Employees.

48. The minimum wage in California during the relevant time period was $15.00 from January 1, 2022 through December 31, 2022 (Lab. Code § 1182.12(b)(1)(F)), $15.50 per hour from January 1, 2023 to December 31, 2023 (*Id.* at (c)), $16.00 per hour from January 1, 2024 to December 31, 2024 (*Id.*) $16.50 per hour from January 1, 2025 to December 31, 2025 (*Id.*), and $16.90 from January 1, 2026 to the present (*Id.*). During the relevant time period, the lowest hourly wage paid to many putative class members subject to the CBA was more than 130% of the minimum wage. (Gutierrez Decl., Ex. A (CBA, Appendix A)). Moreover, the CBA specifically provides for premium pay for overtime hours worked. *Id.* at Article 5.F- Working Hours and Overtime.

49. The CBA also provides procedures for Albertson's employees to grieve and arbitrate disputes pertaining to their employment with Albertson's, including any purported failure on Albertson's part to properly compensate employees. *Id.* at Article 12 – Adjustment and Arbitration. Any arbitration decision rendered under those grievance procedures is final and binding on Albertson's and the affected employee. *Id.* at Article 12(C).

50. Based on the foregoing, Plaintiff's cause of action for unpaid overtime compensation is substantially dependent on analysis and interpretation of the provisions of the CBA. As Plaintiff is exempt from California's overtime requirements under Labor Code Section 514, any claim that he may have for overtime must necessarily arise out of the CBA, and is thus completely preempted by the LMRA. *See, e.g.*, *Firestone v. So. Cal. Gas Co.*, 219 F.3d 1063, 1066 (9th Cir. 2000) (finding that the LMRA preempted a state law claim for overtime that required an interpretation of a CBA).

**PLAINTIFF'S WRONGFUL TERMINATION CLAIM AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM ARE PREEMPTED**

51. Furthermore, Plaintiff's fifth cause of action for wrongful termination in violation of public policy and sixth cause of action for intentional infliction of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

emotional distress are also preempted because both claims necessarily arise out of and/or require a substantial interpretation of Plaintiff's governing CBA concerning discipline and termination practices and procedures. *See Firestone*, 219 F.3d at 1066 (finding preempted where claim required CBA interpretation).

52. First, Plaintiff's fifth cause of action for wrongful termination in violation of public policy is preempted because it necessarily requires an interpretation of the termination/discharge provisions of her CBA. Here, Plaintiff asserts that she was terminated in violation of public policy, arguing that her termination "violated the fundamental public policies of California that prohibit harassment and retaliation on the basis of: disability; work related injury; and sexual harassment." Compl., ¶ 79. Plaintiff's Complaint also asserts that "[a]s a direct and proximate cause of her wrongful discharge, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial." *Id.*, ¶ 81.

53. A determination of whether Plaintiff's termination was in violation of public policy necessarily requires an interpretation of whether there was cause for her termination, and if so, then there was no violation of public policy. This inquiry in turn invokes Article 3 – Discharge of her CBA between Plaintiff's union, of which she was a member, and Albertson's, and necessarily requires an analysis and interpretation of the provisions thereon to determine whether Albertson's had cause to terminate her employment. Accordingly, since a determination of whether Plaintiff was wrongfully terminated implicates the termination provisions of her CBA, specifically whether there was good cause for her termination, this claim is preempted under the LMRA. *See Hollinquest v. St. Francis Med. Ctr.*, 872 F. Supp. 723, 726 (C.D. Cal. 1994) ("To determine whether Plaintiff was wrongfully terminated from her employment at St. Francis, this Court must examine the CBA. Accordingly, Plaintiff's first cause of action is preempted by the LMRA.").

///

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

54. Second, Plaintiff's claim for intentional infliction of emotional distress is also preempted because a determination of whether Plaintiff experienced severe and outrageous conduct as a result of her alleged treatment and ultimate termination requires a determination again of whether Plaintiff was properly terminated for cause, or in the alternative, whether no good cause existed for her termination. Here, Plaintiff asserts that "Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff extreme emotional distress." Compl., ¶ 85. Plaintiff further alleges "substantial losses of earnings and other employment benefits as a result of being emotionally distressed". *Id.*, ¶ 87. Plaintiff further alleges that she was terminated for complaining about Defendant Tovar though she admits that she was accused of being placed on leave for allegedly drinking Fireball Whiskey while at work. *Id.*, ¶¶ 30–31.

55. Under these facts, determination whether Defendants intentionally engaged in extreme and outrageous conduct by terminating Plaintiff's employment requires an interpretation of the terms and conditions of her CBA. Specifically, these allegations invoke Article 3 – Discharge, of her CBA and whether Albertson's had good cause to terminate her employment as outlined in that provision. Accordingly, to the extent this claim is predicated upon Plaintiff's allegations that her termination and/or other disciplinary action constituted severe and outrageous conduct, it is necessarily preempted. *See Milne Employees Ass'n v. Sun Carrier*, 960 F.2d 1401, 1412 (9th Cir. 1991) (finding IIED claim based on claim for wrongful termination preempted because it required a determination whether the CBA's provisions regarding layoffs was extreme and outrageous, and further noting that "[c]laims for intentional infliction of emotional distress are frequently preempted by section 301."); *Lappin v. Laidlaw Transit Inc.*, 179 F. Supp. 2d 1111, 1125–26 (N.D. Cal. 2001) (finding IIED claim predicated on claims related to battery preempted because a determination whether the company failed to properly respond to the plaintiff's claims required an

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

interpretation of whether it took appropriate action as outlined under the applicable CBA).

## SUPPLEMENTAL JURISDICTION

56. This Court has supplemental jurisdiction over Plaintiff's remaining causes of action (harassment and retaliation under FEHA and Labor Code, failure to prevent harassment and retaliation under FEHA, and sexual battery) because those claims share a common nucleus of operative fact with Plaintiff's preempted causes of action because those claims are derivative of Plaintiff's claims that she was wrongfully terminated and experienced severe emotional distress in alleged breach of the governing CBA between Plaintiff's union and Albertson's. *See* 28 U.S.C. §§ 1367(a) and 1441(c).

57. Further, even if the Court were to conclude Plaintiff's wrongful termination claim and intentional infliction of emotional distress claims were not preempted, those claims, along with the above-mentioned claims, would still share a common nucleus of operative facts with Plaintiff's claims over which this Court has jurisdiction under CAFA. That is sufficient to confer supplemental jurisdiction over these claims. *Los Angeles Press Club v. City of Los Angeles*, 799 F.Supp.3d 1007, 1022 (C.D. Cal. 2025) (explaining that all that is required for the "common nucleus of operative fact" to be shown is that "the jurisdiction invoking claim and the supplemental claim have some loose factual connection.") (citing *Pac Steep Grp. V. Commercial Metals Co.*, 600 F. Supp. 3d 1056, 1079 (N.D. Cal. 2022) & *Elements Sprits, Inc. v. Iconic Brands, Inc.*, No. 15-cv-02692-DDP-AGRx, 2015 WL 5470297, at *4 (C.D. Cal. Sept. 17, 2015)). Here, there is more than a "loose factual connection" between Plaintiff's claims: each claim arises out of her employment relationship with Defendants during the same time period and the asserted decisionmakers that would have been responsible for the wage and hour policies overlap with those accused in Plaintiff's non-wage claims. For example, Plaintiff alleges that Defendant Tovar was her manager, and thus, she appears to allege that Defendant Tovar would have a role in implementing Albertson's policies related to meal periods, payment of wages, and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

expense reimbursements as to her employment. Compl., ¶ 24. Accordingly, his testimony would be relevant to each of these claims. Moreover, witness testimony about the workplace environment is relevant to all of Plaintiff's claims, and the same documentary evidence (e.g., schedules, timekeeping records, and communications) will be relevant to establish both the alleged wage violations and the factual circumstances surrounding Plaintiff's remaining claims. Thus, the exercise of supplemental jurisdiction over these claims is proper.

58. Finally, Plaintiff asserted all of these claims together in her Complaint, and thus, it is reasonable to conclude that given the factual overlap between them, she "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). No California state law issue predominates, and this Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1441(c) is thus appropriate. Accordingly, this Court has jurisdiction over the entire Complaint and removal is proper.

59. Pursuant to 28 U.S.C. § 1446(b), this removal is timely because Defendants are filing this removal within thirty (30) days following service of the Summons and Complaint on July 30, 2026. Tai Decl. ¶ 8, Ex. 1.

## NOTICE TO PLAINTIFF

60. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Clerk of the Superior Court of the State of California in and for the County of Riverside.

## NOTICE TO DEFENDANT TOVAR

61. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Defendant Tovar and filed with the Clerk of the Superior Court of the State of California in and for the County of Riverside.

**WHEREFORE**, for all of the foregoing reasons, Defendants hereby remove the State Court Action now pending in the Superior Court of the State of California, County of Riverside, to the United States District Court for the Central District of California.

Respectfully submitted,

Dated: August 28, 2026

REED SMITH LLP

By:

*/s/Tanner J. Hendershot*

Mara D. Curtis
Brian M. Noh
Tanner J. Hendershot
Attorneys for Defendants
ALBERTSON'S LLC,
ALBERTSONS COMPANIES, INC.
and ALBERTSONS SAFEWAY LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware